## LEWIS S. WILLIAMS

*v.*

## NATHAN CHAMPION.

A mortgage for about $1,500 was given to the defendant to secure a bond containing a warrant of attorney to confess judgment thereon. After it became due, and was, with the interest, unpaid, the defendant entered a judgment by confession on the bond, in the supreme court, and issued an execution thereon. The complainant, the mortgagor's brother, in order to aid him, conveyed with him to the defendant, pursuant to an agreement between the complainant and defendant, certain cedar swamps owned by him and his brother, and the consideration thereof was credited on the bond. He also, under the agreement, obtained from his brother a deed for the undivided one-half of another tract of land, likewise owned by them in common, and known as the Tin Shop Lot, on the brother's interest in which the judgment was a

lien, and then gave the defendant a mortgage thereon for $150, which complainant afterwards paid on account of the $1,500 mortgage. Subsequently, the defendant foreclosed his $1,500 mortgage, and after the sale there remained a deficiency.—*Held*, that under the circumstances the defendant should be enjoined (on the ground of equitable estoppel and waiver) from collecting this deficiency out of the Tin Shop Lot, which defendant now claims the right to do by virtue of his lien, under his execution on the confessed judgment, on complainant's brother's interest in the tin shop lot before its conveyance to complainant.

Bill for relief. On final hearing on pleadings and proofs.

*Mr. E. B. Leaming*, for complainant.

*Mr. J. B. Huffman*, for defendant.

The Chancellor.

The defendant, Nathan Champion, held a mortgage given to him by John M. Williams and wife, and dated September 1st, 1874, on certain land in Cape May county, to secure the payment of Williams's bond to the defendant for $1,544.68, besides interest. There was a warrant of attorney to confess judgment on the bond annexed to that instrument. The principal became due September 1st, 1875. It and the interest being due and unpaid, the defendant caused judgment to be entered in the supreme court on the bond, pursuant to the warrant of attorney, on the 16th of June, 1877, for the penalty of the bond, and issued execution thereon to the sheriff of Cape May. No interest had ever been paid on the bond. The sheriff, after he received the execution, called upon the complainant, Lewis S. Williams (who lived in Salem county), brother of John M. Williams, who lived in Missouri. The complainant, according to his testimony, desired to obtain further time for his brother to pay the money, and called on the defendant for the purpose. He, the complainant, proposed an arrangement for the payment of the interest in arrear and the interest for a year more, or thereabouts. The arrangement was that he and his brother should together give the defendant a deed for a certain cedar swamp meadow, of which they each owned an undivided half, for the consideration

of $270, to be credited on the bond, and that he would get his brother (John) to convey to him his interest in another property called the Tin Shop Property, which they held in like manner, and that he would then give the defendant his bond conditioned for the payment of $150 and interest, in consideration of which that amount also was to be credited for interest on the before-mentioned mortgage; the payment of that bond to be secured by a mortgage to be given by the complainant to the defendant on the Tin Shop Property. Neither the cedar swamp meadow nor the Tin Shop Lot was included in the mortgage from John to the defendant. This arrangement so made by the complainant for the payment of the $420 on account of the interest, was agreed to by the defendant, and was carried out by the complainant. He and John conveyed the cedar swamp lot to the defendant, and John conveyed to the complainant his half of the Tin Shop Lot, and then the complainant and his wife gave to the defendant a mortgage on the whole property for $150 and interest, and a receipt was then endorsed on John's bond, under date of September 1st, 1877, and signed by the defendant, for $420 interest. The complainant paid off the $150 mortgage in 1879. The defendant, by proceedings begun in 1881, foreclosed the first-mentioned mortgage (John's) and sold the mortgaged premises. There was a deficiency of $628.44. To raise this he proceeded to sell under an execution issued on the judgment at law. The execution was endorsed with a direction to raise the sum of $1,845.63 debt, and $5.50 costs, with interest from June 16th, 1877. It is stated by the bill and admitted by the answer, that the true amount of the debt is not $1,845.63, but $628.44. The defendant was, when the bill was filed, proceeding to sell under the execution the undivided half (formerly John's) of the Tin Shop Lot, and the bill was filed to restrain him.

The defendant, by his answer, which is sworn to, denies that there was any agreement between him and the complainant that the latter should obtain a conveyance of John's interest in the Tin Shop Lot before giving the mortgage for $150, and says that he never understood that that mortgage was to cover anything

more than the complainant's interest in that property. He swears to the same thing in his testimony, but in the latter he also says that the mortgage was given for money, $150, lent by him to the complainant, and that he does not remember how the $150 balance of the $420 interest was paid. He also says that the complainant came to see him about the interest, about September 11th, 1877. The weight of the evidence is in support of the allegations of the bill on this subject. In the first place, the transaction did not take place on the 11th of September, but in August, as the complainant swears it did. The receipt for the interest is dated September 1st. The deed for the cedar swamp meadow is dated and was acknowledged August 13th, and the $150 mortgage is dated and was acknowledged August 21st. Again, the defendant's memory is not good. Not only can he not remember how $150 of the $420 interest were paid, but he swears that the $150 mortgage was given by the complainant to secure the payment of a loan from him. The complainant paid off the $150 mortgage in the summer of 1879, with money he borrowed from a masonic lodge. Reuben S. Robinson testifies that the last of June or 1st of July of that year, the defendant said to him that the complainant owned the Tin Shop Property, and that he, the defendant, had no further claim against it.

William B. Brown testifies that after the property was advertised for sale under the execution, the defendant told him that he did not know it was advertised and had never given any order to have it advertised, and that he had no claim against it. Thomas L. Russell says that soon after the complainant borrowed the money of the lodge to pay the mortgage, the defendant told him the property was clear. Robert M. Dare swears that about two years and a half before the time when he gave his testimony, which was in the summer of 1884, the defendant told him that he had nothing against the Tin Shop Lot, or had no claim upon it. The defendant, while he denies that he made these statements, seems to have no recollection of the conversations at all. He says he might have said to these witnesses that he had no claim on the complainant's interest in the property, and that the prop-

erty was clear, so far as that interest was concerned. It is worthy of remark that the $150 mortgage was not given upon an undivided half of the property but upon the whole. The defendant is a very old man. He is eighty-two years old. His memory has undoubtedly failed. The weight of the testimony is clearly with the complainant.

If the defendant agreed with the complainant that the former should obtain a conveyance of his brother's interest in the property and then give a mortgage on the whole to the defendant for $150, for his brother's debt to the latter, and that arrangement was carried out by the complainant accordingly, it is clear that the defendant, under the circumstances, ought to be restrained in equity from selling, under the judgment, the interest which James then had in the property. The lot was not worth over $325 or $350; so that the complainant in paying as he did $150 for his brother's interest in it, in fact paid full value for it, or very nearly so. The complainant swears that he did not, when he made the arrangement with the defendant, know of the existence of the judgment and never knew or had any intimation of its existence until June, 1883. It is true the sheriff swears he told the complainant that he had an execution against his brother, but the complainant swears that he did not so understand him, and that he understood from what he said that the defendant was about to foreclose the mortgage which John had given him. This is by no means improbable. The defendant, knowing that he had a lien by virtue of his judgment on the property, agreed with the complainant, who was ignorant of the existence of the lien, that the latter should (in effect) buy that property from his brother, in order, and merely in order, to pay the purchase-money to the defendant on account of the judgment debt. The defendant did not mention the fact that he had such lien, and the complainant took the conveyance and paid the consideration to the defendant in ignorance of it. The latter will be estopped in equity from enforcing his lien on the property under the judgment, and he will be enjoined accordingly. His conduct was, under the circumstances, in equity, a waiver of his lien. If it be regarded as proved that the complainant did, in

fact, know of the existence of the judgment and the lien which it created on the property, the result is the same. The defendant would still be held, in equity, to have waived his lien. He is estopped by his silence.